**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHEN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**


**LINDA RAPER**                                                                                            **PLAINTIFF**


**VERSUS**                                                              **CIVIL ACTION NO. 1:03CV663-P-D**


**FMC TECHNOLOGIES, INC.,**                                                           **DEFENDANT**


**MEMORANDUM OPINION**

This cause is before the Court on the defendant's Motion for Complete Summary Judgment

[24-1]. The Court, having reviewed the motion, the response, the briefs of the parties, the authorities

cited and being otherwise fully advised in the premises, finds as follows, to-wit:

FACTUAL BACKGROUND

Raper began working for FMC Technologies (FMC) as a utility helper on March 24, 1986.

Raper worked as a paint from the outset of her employment with FMC. From 1986 to 1990, Raper's

official job title was painter; in 1990, however, her title changed to surface prep.[1] Raper remained

in the position of surface prep until February 2003 when FMC discharged her as a result of a

reduction in force (RIF).

Raper's supervisors were Myron Kelley and James Harris. As manufacturing supervisor,

Kelley duties included managing the paint department. Harris held the position of leadman; as such,

he acted as Raper's direct supervisor. In early 2003 Raper and a man named Gary Hall were FMC's

---

[1] The primary duty of a surface prep is to spray paint parts. However, painting take up about forty percent of a surface prep's time, while the remaining time is spent preparing the part to paint. The position requires some forklift operation, minor assembly and disassembly of parts, adjustments to painting equipment, blueprint reading, inspecting parts for defects and knowledge of shop flow and process.

only two full-time surface preps. Raper's duties were limited to painting. By contrast, Hall's duties

included blasting and painting. On occasion, Hall also sheared flights, welded, and assembled idlers.

Immediately prior to the RIF, neither Hall nor Raper had enough surface prep work to keep them

busy full-time.

In February 2003, Kelley learned of the company's plan to reduce the number of employees

throughout the organization. In preparation therefore, Kelley had to rank his employees, including

those in surface prep. He ranked Raper and Hall according to proficiency in blueprint reading, shop

process, shop math, inspection, versatility and welding.

Hall ranked higher than Raper in every category. In the area of blueprint reading, Kelley

ranked Hall higher than Raper because he knew Hall had learned to read blueprints in welding

classes; he had personally observed Hall weld and read blueprints. Although Kelley never knew

Raper to have a problem reading blueprints, on occasion she did ask Kelley questions about reading

blueprints. With respect to shop process and math Kelley again ranked Hall higher than Raper based

on his experiences with both employees. Kelley knew Hall to have worked in more areas of the plant

which required more knowledge of shop process than had Raper. Furthermore, Kelley knew Hall

had good knowledge of shop math from his welding and blueprint courses. While Kelley did not

believe Raper had a problem with shop math, he believed Hall "was better at it" than Raper.

Kelley also ranked Hall high than Raper in the area of inspection because he felt that Hall

was more proficient at inspecting product than Raper. Hall received a higher versatility ranking than

Raper because of the different areas of the plant and different departments in which Hall had worked

2

as compared to Raper.[2]  Finally, Hall received a higher ranking than Raper because he had seen Hall

weld in the past and had never known Raper to weld.

Based on Kelley's rankings of Hall and Raper, the company made the decision to include

Raper in the February 2003 RIF.[3]  Hall retained his position as surface prep; in addition to painting

and blasting, his duties include welding and whatever else needs to be done.

After the RIF Raper filed a timely EEOC complaint alleging gender and age discrimination.

After receiving a right to sue letter, Raper filed the instant lawsuit on December 15, 2003.  She seeks

recovery under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

(Title VII) and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (ADEA).  FMC

answered, denying all liability.  After adequate opportunity for discovery, FMC moved for summary

judgment.  The matter has been fully briefed and the Court is ready to rule

STANDARD OF REVIEW

Rule 56©) of the Federal Rules of Civil Procedure authorizes summary judgment where "the

pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits,

if any, show that there is no genuine dispute as to any material fact and that the moving party is

entitled to judgment as a matter of law.  Celotex Corporation v. Catrett, 477 U.S. 317, 322, 91

L.Ed.2d 265, 106 S. Ct. 2548 (1986).  The existence of a material question of fact is itself a question

of law that the district court is bound to consider before granting summary judgment.  John v. State

---

[2]  Kelley testified that Hall had worked in departments 143, 114 and 101 and had experience with blasting, painting, welding, flight notching and idler assembly in those departments.  Kelley knew Raper had worked in departments 143 and 105, but she had done only painting in both departments.

[3]  Harris also testified by deposition that, if faced with a choice of keeping either Raper or Hall in the position of surface prep, he would have retained Hall because of Hall's qualifications.

of La. (Bd. Of T. for State C. & U., 757 F.2d 698, 712 (5th Cir. 1985).

A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L.Ed.2d 202, 106 S. Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." Id. "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. Phillips Oil Company, v. OKC Corporation, 812 F.2d 265, 272 95th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. See Celotex, 477 U.S. at 323, 106 S. Ct. at 2552. Topalian v. Ehrman, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. Union Planters Nat.

Leasing v. Woods, 687 F.2d 117 (5ᵗʰ Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. Topalian, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." John, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment, " even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. Id. at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. Ferguson v. National Broadcasting Co., Inc., 584 F.2d 111, 114 (5ᵗʰ Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." In Re Municipal Bond Reporting Antitrust Lit., 672 F.2d 436, 440 (5ᵗʰ Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed. R. Civ. P. See also Union Planters Nat. Leasing v. Woods, 687 F.2d at 119.

While generally "[t]he burden to discover a genuine issue of fact is not on [the] court, (Topalian, 954 F.2d at 1137), "Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention–the court must consider both before granting a summary judgment." John, 757 F.2d at 712, quoting Keiser v. Coliseum Properties, Inc., 614 F.2d

5

406, 410 (5ᵗʰ Cir. 1980).

LEGAL ANALYSIS

I.      Title VII Claim

Title 42, section 2000e-2 forbids an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).   A plaintiff may prove intentional discrimination by way of either direct or circumstantial evidence.  Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5ᵗʰ Cir. 2000). Those who rely on circumstantial evidence must first construct a prima facie case pursuant to the framework established in McDonnell-Douglas Corporation. v. Green.  411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).  The elements of a  prima facie case are:

1.      Membership in a protected class;

2.      The claimant is qualified for the position;

3.      The claimant was discharged;

4.      After claimant's discharge, others who were not members of the protected class remained in similar positions.  Meinecke v. H&R Block of Houston, 66 F.3d 77, 83 (5ᵗʰ Cir. 1995).

McDonnell Douglas, 411 U.S. at 802.

Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the employment decision.  Id. at 802-03.  If the employer does so, the burden then shifts back to the plaintiff to produce evidence tending to establish that the reason advanced in support of the decision is a mere pretext for

6

discrimination.  Id. at 804, 807.  A plaintiff may do so by producing evidence of discriminatory

motive or by showing the employer's "basis" for the refusal to hire unworthy of belief and that,

instead, the true reason was unlawful discrimination.  St. Mary's Honor Center v. Hicks, 509 U.S.

502, 516-519 (1993).  The plaintiff at all times retains the ultimate burden of persuading the fact

finder that the employment decision was motivated by intentional discrimination.  Texas Dept. of

Community Affairs v. Burdine, 450 U.S. 248, 253, (1981).

Raper established a triable issue of fact with regard to the elements of her prima facie case.

Her gender, female, places her in a protected class.  She possessed the necessary qualifications for

the surface prep position; she was discharged; and Gary Hall, a male, retained his position as a

surface prep.

FMC offered the plant-wide reduction in force as its legitimate nondiscriminatory reason for

its decision to terminate Raper's employment.  As a further matter, FMC avers that it decided to

retain Hall rather than Raper because Kelley ranked Hall more highly in every relevant category of

job performance and because Kelley's skills set was more varied than that of Raper.  These reasons

suffice to meet FMC's burden of production at this stage of the summary judgment inquiry.

The burden therefore devolves to Raper.  In order to withstand defendant's motion for

summary judgment, she must point to specific admissible evidence upon which a rational trier of fact

could base a finding of sex discrimination.

Raper urges that her prima facie case is relevant to a determination of pretext.  In addition,

she urges that the company distributed a questionnaire regarding employee job skills and experience

just prior to the RIF.  Raper contends that, unlike other employees who were retained, she never

received the questionnaire.  Raper avers that this failure was more than a mere oversight; instead she

7

suggests that it proves FMC had already decided which employees to layoff.

Raper's contention lacks evidentiary support. There is no evidence that the company disseminated any such questionnaire; furthermore, Raper's averments regarding the reasons for and use of such a questionnaire are founded on nothing more than conjecture.

Next, plaintiff argues she was more qualified than Hall, as evidenced by the fact that she did most of the painting while Hall spent much of his time blasting and doing jobs other than painting. Her response highlights her loyalty to the company and her commitment to turning out quality work. Raper attempted to contrast these qualities with evidence of Hall's poor character–as shown by testimony that Hall received a reprimand for sleeping on the job.[4] Lastly, she attacks the ratings upon which FMC based its discharge decision as subjective and inaccurate.

To establish a factual issue of pretext based on relative qualifications, Raper must be capable of proving she was "clearly better qualified" than Hall. Amburgey v. Corhart Refractories Corp., Inc., 936 F.2d 805, 814 (5th Cir. 1991). To do so, she must provide specific evidence of comparative work performance–"mere subjective speculation will not suffice." See Nichols v. Loral Vought Systems Corp., 81 F.3d 38, 42 (5th Cir. 1996). Furthermore, unless the difference in qualifications is so apparent as "virtually to jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own experience and expertise in the field in question." Odom v. Frank, 3 F.3d 83, 847 (5th Cir. 1993).

Raper's evidence falls short of this exacting standard. The evidence is clear that FMC based

---

[4] Raper also attempted to show that Hall had a history of reporting for work after consuming alcohol and/or absenteeism for similar reasons. Raper had no personal knowledge of such misconduct and the allegations were soundly refuted by the other record proof.

its decision to terminate Raper on the basis of Kelley's proficiency rankings, not on the more subjective "ideal employee" standard Raper would have the Court embrace. At the very most, Raper's attack on Kelley's rankings suggests that Kelley was misinformed about Raper's abilities, it does not cast doubt on whether Kelley had a good faith belief that his rankings were accurate. Finally, Raper's evidence that she was the better "painter" does not suffice to overcome FMC's exercise of business judgment in retaining Hall because he was the more versatile of the two employees. The surface prep position encompassed far more than merely painting. No reasonable trier of fact could conclude Raper was clearly better qualified than Hall.

Finally, Raper relies on recent Supreme Court precedent in an effort to survive summary judgment. Citing to <u>Desert Palace, Inc. v. Costa</u>, she urges that she need not show defendant's proffered reason is pretext so long as she introduces evidence that gender played a role in FMC's decision. 539 U.S. 90 (2003). While this is, indeed, a correct statement of the law, the record is devoid of any evidence that gender played any role whatsoever in the defendant's decision to terminate her. In the absence of such evidence, FMC is entitled to judgment as a matter of law on Raper's Title VII claim.

II.     ADEA Claim

In order to establish a prima facie case of age discrimination in a reduction in force case in which the plaintiff is not replaced, the plaintiff must establish:

1)      She is a member of a protected class;

2)      She was qualified for the position she held;

3)      She was discharged; and

4)      The discharge was because of her age.

9

Meinecke v. H&R Block of Houston, 66 F.3d 77, 83 (5th Cir. 1995).

Assuming Raper's ability to demonstrate a genuine issue of fact as to the elements of her prima facie case under the ADEA–e.g., Raper is over the age of forty; she is qualified; she was discharged; a younger person (Hall) was retained in the same or a similar position–FMC's evidence of a legitimate, nondiscriminatory motive is the same as in its Title VII case. Plaintiff's proof of pretext is similarly lacking. Therefore, for precisely the same reasons articulated in subsection II. supra, defendant is entitled to summary judgment on plaintiff's ADEA claim.

## CONCLUSION

Based on the foregoing facts and analysis, the Court finds that the defendant's motion is well-taken and should be granted. A judgment will issue accordingly.

This, the 29th[th] day of June, 2005.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE